[Crim. No. 1106. In Bank.—July 20, 1904.]

THE PEOPLE, Respondent, v. HULBERT R. WRIGHT, Appellant.

144  161<br>e148  341

CRIMINAL LAW — HOMICIDE — SELF-DEFENSE — IMPROPER EVIDENCE.—
Where upon the undisputed facts the case was clearly one of self-defense, and a verdict of guilty of manslaughter cannot be accounted for except upon the admission of improper evidence prejudicial to the defendant, the judgment of conviction will be reversed.

ID.—ILLICIT RELATIONS—IRRELEVANT EVIDENCE—MOTIVE OF KILLING.—
Evidence of illicit relations between the defendant and the former wife of the deceased was impertinent to the issue, where the killing was admitted and the only issue was as to necessary self-defense; such evidence was not admissible to show the defendant's motive for the killing, and its admission was prejudicial error.

ID.—DEFECTIVE CONDITION OF GUN OF DECEASED—KNOWLEDGE OF DEFENDANT NOT SHOWN.—Evidence of the defective condition of the gun of the deceased, and that its defective condition was talked about, without proof of the presence or knowledge of the defendant, was inadmissible.

ID.—IMPROPER QUESTIONS BY PROSECUTION—ASSUMPTION OF DAMAGING FACTS.—It was improper for the prosecution to ask questions the main purpose of which was to keep persistently before the jury the assumption of damaging facts not proven.

APPEAL from a judgment of the Superior Court of Butte County and from an order denying a new trial. John C. Gray, Judge.

CXLIV. Cal.—11

Instruction number 32 was as follows: "With respect to all verbal admissions or statements made by one and repeated by another, they ought to be received by the jury with great caution. The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake; the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party actually did say. But when the admission is deliberately made and precisely identified, the evidence it affords is often of a satisfactory nature."

The further facts are stated in the opinion of the court.

W. E. Duncan, Jr., for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

HENSHAW, J.—The defendant, informed against for the murder of one Henry C. Farley, was convicted of manslaughter, and from the judgment and from the order denying his motion for a new trial he appeals. The defendant's plea was self-defense.

The undisputed facts are that upon the twenty-third day of May, 1903, defendant killed Farley under the following circumstances: Mrs. Farley had secured a divorce from her husband for his failure to provide, which divorce was absolute. She was living in her own house, for which she was paying the rent, with her three children,—the oldest a son, Joe, aged twenty; the second, a daughter, Gladys, aged eleven. Mrs. Farley, who was so poor that she did washing for certain of the neighborhood people, amongst others for the defendant, had bought from her ex-husband all the household furniture. Upon May 17th he told Mrs. Farley that he had sold his mining claim and was going East, and bade his children good-by. He returned again to Mrs. Farley's home upon the 20th of May upon a visit to his children, and went away again, not appearing thereafter until the day of the homicide. About 6 o'clock of the evening of that day the defendant went to

Mrs. Farley's house for his washing. Mrs. Farley asked him to stay for supper, and he sat down at the supper-table in the kitchen with Mrs. Farley and her children. While they were thus seated, Mrs. Farley heard a sound as of some one entering the sitting-room, and went from the kitchen into the sitting-room to see who it was. She came back almost immediately and said: "It is Henry" (meaning Farley). There had been ill-feeling between the men. Farley had upon one occasion before the divorce shot at Wright. Upon another occasion had tried to shoot him in the back with a rifle as he was walking along the lane, and was prevented by his wife and daughter, and upon a third occasion had been seen watching his wife's home with a rifle, and, when discovered, stated that he was waiting "to catch that son-of-a-bitch Wright inside his yard." The last two occasions were after the divorce, and were both known to the defendant. Mrs. Farley told her son to go into the room and "make his father behave." The son, who admits his bias against defendant, testifies that under his mother's direction he did go through the sitting-room into his bedroom, where he found his father. He talked with him a little while, but did not remember what he said. His father took off a shot-pouch and powder-horn, and started into the sitting-room. In the mean time Wright in the kitchen had risen, drawn a pocket-knife, and stood by the kitchen door, but under Mrs. Farley's protestations he put the knife back in his pocket. As Farley walked into the sitting-room his son said to his father, "Be careful." Upon which the father jumped back into the bedroom and seized a double-barreled shot-gun. The son wrestled with his father for the possession of the gun, asking him not to shoot. The father threw him to one side and started for the door leading from the bedroom into the sitting-room. The son closed and held the door against his father, and was conscious that he was being aided in holding it by somebody upon the other side of the door. This was his mother. The father turned from the door and climbed through a window of the bedroom onto the porch with the double-barreled shot-gun in his hand. The son then entered the sitting-room, where he found the defendant and his mother. He told them that the father had gone through the window with the double-barreled shot-gun. The defendant, who had picked up his rifle, asked if he should

defend himself, and both mother and son told him no, to go. He started to make his escape by the front door, but Mrs. Farley, who had preceded him, looking out saw Farley upon the porch with his shot-gun leveled at the door. She told Wright to go out through the kitchen door, which he did at a quick pace. Farley, either hearing or suspecting this, went from the front porch around to the back porch, and when Wright was about thirty feet from the house he heard Farley say: "Now, you son-of-a-bitch, I have got you," and, looking, saw Farley leaning around the corner of the house with his shot-gun aimed. Both men then fired and both missed. According to the testimony of the defendant and Mrs. Farley, Farley fired first. His shot was high and in a direction that would have carried it about three feet over the head of the defendant. According to the testimony of the son Joe, he could not tell which fired first. The defendant promptly worked his repeating rifle, and fired a second shot, which struck Farley in the back of the neck and caused his death.

Upon this bald statement of undisputed facts it is no little surprising that the jury should have convicted a man whose life previous to the fatal affray had thrice been attempted by the deceased, and the more surprising is it when it is considered that the defendant was where he had a perfect right to be, doing what he had a perfect right to do, was using every endeavor to avoid a fatal combat, had narrowly escaped assassination when he started to go out by the front door, and was moving rapidly away when arrested by the call of the deceased, "Now, you son-of-a-bitch, I have got you."

Nor is it conceivable that such a verdict would have been rendered but for the admission of testimony impertinent to the issue and highly prejudicial to the defendant. Under the guise of "showing motive" the prosecution was allowed to present much testimony bearing upon the intimated or alleged improper relations existing between Mrs. Farley and the defendant. Proof of motive, it is true, is always admissible, and sometimes extremely important. (*People* v. *Durrant*, 116 Cal. 208.) In cases of circumstantial evidence where the identity of the slayer is in doubt evidence of motive is both pertinent and valuable. Thus, in the application of this rule, where one spouse is killed, evidence of immoral relations existing between the defendant and the other spouse is admitted as

tending to show motive which otherwise might be absent. But, under the undisputed facts in this case, what possible "motive" for the killing of the deceased by this defendant could this evidence show? Mrs. Farley was no longer the wife of deceased. She was living in her own home with her own children. Farley had sold his property and had announced his intention of going back to the state of Missouri. What conceivable light upon motive, therefore, could this evidence shed? If, as the prosecution sought to show, this intimacy had existed for the past four or five years, Mrs. Farley being a free woman and Farley, upon his own statement, about to take his departure from the state, why should the defendant have seized such an occasion to wantonly slay him? If Farley had succeeded in killing the defendant, there would have been much pertinency in all this evidence as tending to show the passion and malice which Farley entertained. The simple truth of the matter is, that this mass of testimony admitted against the defendant was meaningless as to motive, and could have but inflamed, as doubtless it was expected it would inflame, the minds of the jurors against the defendant. The case in this respect is analogous to that of *People* v. *Gress,* 107 Cal. 463. There the defendant was convicted of having murdered one Louis Assalena, and upon the trial his wife was allowed to testify to the influence which the defendant exerted over her, and to his efforts to induce her to leave her husband. This court said: "Under the circumstances of this case the evidence was not pertinent to any issue before the jury. Were the case one of circumstantial evidence, and the fact in doubt as to whether defendant did the killing, such evidence might be admissible upon the question of motive (*People* v. *Pearson,* 79 N. Y. 424[1]), but here the killing was admitted, and the only issue was whether it was in necessary self-defense. In such a case evidence of this character serves no competent purpose, while its effect was necessarily prejudicial to defendant's case."

The second matter of evidence to which we have referred as being prejudicial to the defendant is that touching the condition of the shot-gun which Farley used. It appears that while both barrels of the gun were loaded, the lock of the left-hand barrel was defective so that it could not be dis-

[1] 35 Am. Rep. 524.

charged. Testimony as to the condition of the gun was offered and received. It would have been proper for the prosecution to have shown, if it could have shown, that the defendant knew the condition of the gun and knew that when Farley had fired his first shot he was practically unarmed, because, if under these circumstances and with sufficient opportunity for deliberation the defendant had then fired his second fatal shot, the killing would, of course, have been unlawful. This proof, however, was not made, but Joe Farley was allowed to testify to the fact that the gun was broken, and was then asked and permitted to answer the question, "Did you ever talk about this gun being broken around the house, or was it talked about that the gun was broken while at the Concow house?" And the witness answered that he did. The objection that the defendant was not shown to have been present when the defect in the gun was talked about was well taken. The question, with many others asked in the case, was like those criticised in *People* v. *Mullings*, 83 Cal. 145.[1] "It is quite evident that the questions, and not the answers, were what the prosecution thought important. The purpose of the questions clearly was to keep persistently before the jury the assumption of damaging facts which could not be proven, and thus impress upon their minds the probability of the existence of the assumed facts upon which the questions were based. To say that such a course would not be prejudicial to defendant is to ignore human experience and the dictates of common sense."

A challenge to the panel was interposed upon various grounds, but as the alleged irregularities are not such as are likely to recur it is unnecessary here to consider them. Upon the whole the jury was fairly instructed, though it might perhaps have been better if the court had omitted instruction 32, or, at least, in giving it had limited it more strictly to the language of the code. (*People* v. *Wardrip*, 141 Cal. 229.)

The judgment and order appealed from are reversed and the cause remanded for a new trial.

McFarland, J., and Van Dyke, J., concurred.

SHAW, J.—I concur in the opinion of Justice Henshaw, except the portion thereof relating to the admission of evi-

---

[1] 17 Am. St. Rep. 223.

dence tending to show a motive on the part of the defendant to kill the deceased, Farley. There was here no actual eyewitness who saw Farley at the moment he wás shot, except the defendant. The evidence does not show the position and actions of Farley at the precise moment of the fatal shot. If the defendant had the purpose to kill Farley, he might well have taken advantage of the previous attack which put him in a place where the right of self-defense arose, and, seeing that the danger had ceased, have fired the shot, not in self-defense, but in pursuance of an independent design to kill his previous assailant, who was then retreating. There was other evidence tending to show such a state of the case. All this was for the jury to determine, and I do not think the court erred in admitting the evidence. Evidence of that character is, however, likely to be misunderstood by the jury, and if the object of it is not clearly explained it may be very prejudicial to the defendant. It should therefore be made the subject of a special instruction explaining its purpose, and the jury should be directed to consider it only so far as it may serve to explain the motives of the defendant. This was not done in the present case.

ANGELLOTTI, J.—I concur in the judgment upon both of the grounds stated in the opinion of Mr. Justice Henshaw. The evidence as to the intimated improper relations between defendant and the wife of the deceased, was not, under the circumstances of this case, material upon the question of motive, and was therefore inadmissible for any purpose. It cannot be doubted that the effect was prejudicial.

Evidence as to the defective condition of one barrel of the gun was inadmissible in the absence of a showing that the defendant had notice thereof.