[Crim. No. 1227. In Bank.—December 14, 1905.]

# THE PEOPLE, Respondent, v. L. B. COOK, Appellant.

CRIMINAL LAW—MURDER—PRIMA FACIE CASE—PROOF OF MOTIVE.—Upon a trial for murder, the prosecution has the burden of proving the guilt of the defendant beyond a reasonable doubt, and need not rest with a *prima facie* case, but may introduce as part of the evidence in chief testimony tending to show a motive for the crime charged.

ID.—CIRCUMSTANCES TENDING TO REDUCE OFFENSE—ADVANCES BY DECEASED TO DEFENDANT'S DAUGHTER—THREATS—PROOF OF INCEST—MOTIVE.—Where the actual circumstances surrounding and immediately preceding the shooting, including a statement to defendant by his daughter that deceased had made improper advances to her, and had threatened the defendant, would have warranted the jury in lessening the offense, if not in finding self-defense, it was proper to allow the prosecution to prove in chief that incestuous relations existed between the defendant and his daughter, as tending to show a motive on his part to murder the deceased.

ID.—PROOF OF DISTINCT OFFENSE.—When some distinct offense is so connected with the crime charged in the indictment that proof of the former, in connection with other evidence, would sustain a probable inference of guilt as to the latter, such distinct offense may be proved to show a motive on the part of the defendant to commit the crime charged, or the intent with which an equivocal act is done.

ID.—JEALOUSY ON PART OF SLAYER—OFFER OF PROOF—ABSENCE OF MOTION TO STRIKE OUT.—When the district attorney offered the evidence of defendant's criminal relations with his daughter, he offered to connect it with proof that defendant was extremely jealous of the attentions of any one to her, and that the deceased had been paying her attentions. This offer made the admission of the proof correct, and though the offer was not made good, in the absence of any motion to strike out the evidence, it cannot be said that there was any error in the ruling of the court.

ID.—CROSS-EXAMINATION BY PROSECUTION OF DAUGHTER AS WITNESS FOR PEOPLE—CONTRADICTORY STATEMENTS.—The court did not err in permitting the district attorney to impeach defendant's daughter as his own witness to prove sexual intercourse with her father, when she testified to the contrary, by proving that she had made a contrary statement to him, and also to others at different times and places.

ID.—LIMIT OF CROSS-EXAMINATION.—Such examination was permissible under the facts of the case at the first trial, but would not be permissible again upon another trial.

ID.—WEAPONS OF DECEASED.—It was error to exclude evidence that deceased was armed with a large knife as well as a rifle on the

day of the homicide on the ground of incompetency, irrelevancy, and immateriality, notwithstanding the offer of defendant to show that the fact was communicated to the defendant.

ID.—INTERCEPTED LETTERS OF DEFENDANT. — Intercepted letters of defendant to his daughter were properly admitted in evidence.

ID. — INSTRUCTIONS — EVIDENCE OF INCEST — SELF-DEFENSE — SUDDEN QUARREL—ANOTHER CRIME.—The court should have given the following requested instruction: "Evidence has been introduced by the prosecution in this case to show that defendant prior to the shooting had had illicit intercourse with his daughter. I charge you that although it should appear to you from the evidence that such a state of affairs exists, nevertheless the defendant would not for that reason be deprived of the right of self-defense, either in protection of his life or the prevention of great bodily injury, nor would he be deprived of the right to the indulgence the law allows for a killing upon a sudden quarrel or in the heat of· passion. Whether or not the defendant had at some previous time committed another crime different from that for which he is being tried cannot be taken into consideration by you as a reason for convicting him of the crime with which he is charged."

ID.—OTHER REQUESTED INSTRUCTIONS.—Requested instructions containing faulty expressions, and requested instructions otherwise embodied in requests given by the court, were properly refused.

ID.—MISCONDUCT OF DISTRICT ATTORNEY—STATEMENT OF INCRIMINATING FACT NOT IN EVIDENCE.—It was misconduct of the district attorney calling for the rebuke of the court, to state an incriminating fact not in evidence in order to found upon it an argument that defendant had sent one man to the penitentiary from the motive of jealousy, and was therefore capable of killing another upon the same incitement; and it was no excuse for the misconduct that the counsel for defendant had referred to the former trial in his argument.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order denying a new trial. J. Q. White, Judge.

The facts are stated in the opinion of the court.

Charles F. Craig, and J. W. Preston, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy-Attorney-General, for Respondent.

BEATTY, C. J.—The defendant was convicted of murder in the first degree and sentenced to be hanged. He appeals from the judgment and from an order denying his motion

for a new trial. The attorney-general objects to any consideration of the appeal from the order, upon the ground that it does not appear from the bill of exceptions that a motion for a new trial was made or that it was denied, or that the order, if made, was excepted to. This is all true, but it is also true that the clerk's minutes of the proceedings upon the arraignment of the defendant for judgment show that he then moved for a new trial, that his motion was overruled, and that he reserved an exception to the order. The minutes of the court do not show the particular grounds of the motion, but in other respects the case is the same as in *People* v. *Ward*, 145 Cal. 736, [79 Pac. 435], where this point was somewhat considered, though not decided. It is unnecessary, however, to dwell upon this feature of the case, for the appeal from the judgment presents every question that could have been raised on an appeal from the order, except that of the sufficiency of the evidence to sustain the verdict; and it would avail the defendant nothing if he could urge that question, because it is clear that the evidence (the whole of which is shown to be included in the bill of exceptions) was sufficient to establish *prima facie* a case of murder of the first degree.

For the purpose of disposing of the questions presented by the appeal from the judgment, it will be convenient to state some of the leading features of the case as disclosed by the evidence. For some time prior to the 15th of July, 1904, the defendant and a number of other men, including the deceased, had been employed by one Albers in peeling tanbark at a place known as "The Outlet," in Mendocino County. Of the localities mentioned in the evidence, it seems that the camp of Albers, where the work of peeling bark was conducted, was up in the canyon. Descending the canyon, the trail passed the house of Pomalek,—one of the workmen, and a witness for the people,—and at a distance of from one hundred and fifty to three hundred yards farther down reached the house of one Rafaelo, where the defendant, with his fifteen-year-old daughter, Ida, was temporarily residing. The deceased, Max Krieger, and the defendant had been working together for a short time, and down to the day of the homicide were, outwardly at least, on not unfriendly terms. On July 15, 1904, defendant and Pomalek

were working together at the camp; but Krieger, who had
been celebrating his birthday, was drinking and partially
intoxicated. During the morning, he, in company with two
companions, appeared at the Rafaelo cabin, where Ida Cook
was alone and engaged in preparing her father's midday
meal. She testifies that Krieger entered the kitchen, took
gross liberties with her person, and made most indecent
proposals to her. Whatever may be the truth as to the conduct
of Krieger at that time, it appears to be unquestioned that
it was disagreeable and offensive to the girl. Mrs. Pomalek,
who happened to come to the place while he was there,
heard from the outside enough of the conversation in the
back room to induce her to expostulate with Krieger, whose
demeanor and language convinced her that it was not a fit
place for the girl, so that finally she persuaded her to go
over to her house on pretense of going for eggs. As the
girl did not return, Krieger followed after her, but was
informed by Mrs. Pomalek that she was up at the camp
with her father, whereupon he left. When, shortly after
noon, defendant and Pomalek came down for their dinner,
the girl met her father at Pomalek's and told him in
Pomalek's presence how Krieger had been acting. She tes-
tifies that when Krieger was soliciting her to have sexual
intercourse with him and taking indecent liberties with her
person she threatened to inform her father, upon which he
said: "I am not afraid of the old son of a bitch. I will
kill him." Of course, there is no direct corroboration of
her testimony as to the worst of Krieger's alleged miscon-
duct when they were alone; but she is corroborated to a
certain extent by Mrs. Pomalek and by circumstances. Mr.
Pomalek was called as a witness for the people to prove
threats by the defendant. He testified on his direct exam-
ination that defendant had no pistol in the morning, but
brought one with him in the afternoon, and was so mad
he could hardly work; that he said that Krieger had been
down to the house bothering his little girl; that he felt like
going down to the camp and shooting him down before the
men and the children; and that he repeated this two or
three times. He further testified that he advised defendant
not to shoot anybody, and that he cooled off and towards
evening seemed to forget all about it. At the time defend-

ant was saying these things, Pomalek says he stated in that connection that he had been told by his daughter that Krieger was going to fix him, and that was the reason he had got the pistol,—that "if the overgrown brute came around he would give him all he wanted." On his cross-examination Pomalek testified that during the four or five days he had worked with defendant he had manifested no ill-feeling towards Krieger until the afternoon of the shooting, and that he had himself heard the girl tell her father about Krieger's misconduct and his threats to fix him (defendant). When they were returning to camp after dinner defendant had Rafaelo's pistol, and said: "He's going to fix me, and I am going to be ready for the overgrown brute."

The same afternoon, shortly before six o'clock, Krieger again made his appearance at Rafaelo's house. He had been drinking, but the testimony of two witnesses (Sowers and Whitcomb), who happened to be there when he arrived and went away with him, is conflicting as to the degree of his intoxication. According to the former he was staggering drunk, needing assistance to enable him to go up the trail towards Pomalek's. According to the latter he was quite able to take care of himself, and this is corroborated by Rafaelo. Ida Cook was at the house when Krieger arrived, and Rafaelo and Mrs. Pomalek came a few minutes later. It does not appear that he interfered with her at that time, except to express his displeasure on account of her telling Rafaelo that he had been there drinking his wine. But when Mrs. Pomalek went away—as she did in a few minutes— the girl again went with her to her house, and remained there until her father came down on his way home, when she joined him, and they passed down the trail together. They were talking, but no one overheard what was said. She testified that all she told her father at this time was that Krieger had been at the house again. Almost immediately after starting down the trail from Pomalek's, defendant and his daughter met Krieger, Sowers, and Whitcomb, coming up the trail from Rafaelo's. The evidence of Sowers, Whitcomb, and Ida Cook is conflicting as to what then happened; but in some important points it agrees. Sowers, Whitcomb, and Krieger each had a rifle. Cook accused Krieger of being down at his house, where his girl was,

and Krieger denied it. Cook drew his pistol, and Krieger made some motion that induced Sowers .to seize his rifle and disarm him. Krieger then advanced upon defendant, and defendant shot him, inflicting a wound which caused his death in a few minutes. Sowers says that when the parties met Krieger was drunk and he was assisting him along; that defendant had his hat off and was "white in the face"; that when he took Krieger's rifle from him he made a drunken stagger towards defendant; that he caught him and drew him back, and at the same moment defendant fired. Whitcomb says Krieger was not drunk; that he needed no assistance; that he advanced upon defendant (who was commanding him to stand back) in a determined manner, with his hands up as if he meant business; that Sowers did not pull him back. On the question of Krieger's intoxication Whitcomb was corroborated by Rafaelo and Ida Cook, and by the latter as to the defendant's repeated command to Krieger to stand back before he shot. There was, it will thus appear, evidence in the actual circumstances surrounding and immediately preceding the shooting from which the jury would have been warranted in finding either murder in the second degree or manslaughter, if not self-defense, and this state of the evidence has a material bearing upon most of the points to be considered.

There remains to be stated, however, the peculiar and most important feature of the case. The district attorney offered to prove, and was by the court permitted, over the objection of the defendant, to introduce evidence tending to prove, the existence for some months previous to the homicide of an incestuous relation between the defendant and his daughter. The theory upon which this evidence of an independent crime was offered and admitted was that it pointed to a motive on the part of the defendant to murder Krieger. It was suggested that defendant may have feared that Krieger either knew, or, if he should succeed in winning the favor of the girl, would discover, the criminal intercourse of father and daughter, and would expose their guilt. It was more strongly argued that defendant's jealousy of any one who sought to ingratiate himself with the girl, whether by honorable or other advances, would prompt him to seek his rival's life.

The exception to the admission of this evidence gives rise to the first question to be considered. The defendant contends that the evidence was wholly inadmissible, and even if admissible was no part of the people's case in chief. The position he takes is that when, by direct evidence of an unlawful killing, the prosecution has made out a *prima facie* case of murder, the people have no right to add proof of a motive on the part of the defendant to seek his victim's life, unless in rebuttal of some affirmative defense. If this were a sound proposition, it would be difficult to show how this defendant was or could have been injured by admitting at the beginning of the trial evidence which must have come in at the close. But the proposition is clearly untenable. The prosecution in a criminal case is not obliged to rest upon evidence which merely establishes the guilt of the defendant *prima facie*—upon evidence, that is to say, which is merely sufficient in law to sustain a verdict of guilty. The guilt of the defendant must be proved beyond a reasonable doubt in order to secure such a verdict, and the district attorney not only may, but ought to, introduce all proper evidence at his command tending to establish the guilt of the defendant, in order to overcome any doubts or scruples of the jurors. And this is especially true of a trial for murder, where proof of an unlawful killing, in the absence of evidence indicating express malice (deliberate purpose to kill), would only establish a case of murder in the second degree.

Regarding the other ground of objection, the rule that a defendant in a criminal cause can be tried for no other offense than that charged in the indictment or information is universally recognized, and it is equally well established that in order to convict the defendant of the particular offense charged the prosecution is not allowed to introduce evidence of other offenses for the mere purpose of showing that he is a bad man, and therefore more likely to have committed the offense than if he had been of good character. The prosecution is not even allowed under our law to attack his character by evidence of general repute, except in rebuttal of evidence on that point first introduced by him. But when some distinct offense is so connected with the crime charged in the indictment that proof of the former, in

connection with other evidence, would sustain a probable inference of guilt as to the latter, such distinct offense may be proved,—as, for instance, to show a motive on the part of defendant to commit the crime charged, or the intent with which an equivocal act has been done, such as passing a counterfeit bill, or receiving stolen goods. The general rule and its exceptions are very elaborately discussed in the opinion of Justice Werner in the celebrated case of *People* v. *Molineux*, 168 N. Y. 290, [61 N. E. 286], where many of the principal authorities are cited. The result of the discussion, I think, may be summed up in the proposition that evidence which is relevant to any material fact in issue in a criminal case cannot be excluded because it may prejudice the defendant by proving him guilty of other crimes than that for which he is on trial. (*People* v. *Walters*, 98 Cal. 141, [32 Pac. 864].) The rule as thus stated has been applied in a number of cases decided in this court, of which the following are examples: *People* v. *Lane*, 101 Cal. 513, [36 Pac. 16]; *People* v. *Wilson*, 117 Cal. 688, [49 Pac. 1054]; *People* v. *Valliere*, 123 Cal. 576, [56 Pac. 433]; *People* v. *Brown*, 130 Cal. 594, [62 Pac. 1072]. These were all cases in which the prosecution was allowed to prove distinct offenses for the purpose of showing a motive on the part of the defendant to commit the crime charged in the information. But in order to render evidence of this character admissible, it must have a direct tendency, in view of the surrounding circumstances, to prove the motive or intent or other material fact, and whether it is relevant or not is a question for the court; and in several instances this court has reversed convictions for the admission of evidence of distinct offenses, upon the ground that such evidence had no tendency to prove the charge laid in the information. (*People* v. *Lane*, 100 Cal. 379, [34 Pac. 856]; *People* v. *Wright*, 144 Cal. 165, [77 Pac. 877].) In *People* v. *Lane* it was held that evidence of a distinct substantive offense cannot be received unless there is some clear connection between the two offenses, from which it may be logically inferred that if guilty of one he is also guilty of the other.

These cases, and the decisions everywhere, clearly sustain the position of the attorney-general that if the fact of incestuous relations between the defendant and his daughter,

in view of the other facts in evidence,⁻ did furnish the ground
for a logical inference that he desired to put Krieger out
of the way, and was willing to murder him in order to bring
about that result, then proof of such relations was admissible.
On the other hand, the same authorities show with equal
unanimity that if the alleged relation between defendant and
his daughter had no tendency to establish a motive on the
part of defendant to put Krieger out of the way, and there-
fore avail himself of some pretext for provoking an affray
in which he might kill him, the evidence in question was
irrelevant, as it was necessarily prejudicial in the highest
degree.   It becomes necessary, therefore, to examine the
grounds upon which it is contended that a motive on the
part of defendant to murder Krieger may be inferred
from the assumed fact of the incestuous relation with his
daughter.

The first of the two grounds suggested by the district at-
torney, upon which he argued the relevancy of the testi-
mony,—viz., the possible fear of the defendant that Krieger
might know or might find out, and, as a rival for the girl's
favors, might expose, defendant's criminal intercourse with
his daughter,—seems to have been abandoned on the appeal.
No reference is made to it in the attorney-general's brief,
and there is nothing in the evidence to indicate that Krieger
had any knowledge of the supposed criminal intercourse, or
that he had any opportunity of discovering it.   But it is in-
sisted there is evidence that the defendant was jealous of
Krieger.   All of this evidence is cited in the brief of the
attorney-general, and I shall quote it in full.   A letter writ-
ten by defendant to his daughter from the jail and intercepted
by the sheriff was read in evidence.   It contains a number of
expressions which, in connection with other evidence intro-
duced at the trial, go very far to prove the charge of incest;
but there is nothing bearing upon the point of jealousy of
Krieger, unless it is found in the closing sentences: "Re-
member poor papa.   Kiss Tom and Jerry.   Don't have any-
thing to do with any man.   Be true to me.   By by."   These
words follow almost immediately that part of the letter in
which he urges his daughter to marry one "George" imme-
diately in order that she may have a protector, and in order
to induce George to stick to him.   The only other evidence

on the point is that of Pomalek, who testified that, Krieger having mentioned to him his liking for defendant's daughter, he spoke to defendant on the subject four or five days before the killing: "I says to Mr. Cook that Krieger was a pretty good-looking man, and good worker, and it would be pretty good if his daughter married him and they would be for themselves. Mr. Cook says—well, he says: 'She wouldn't go with nobody,' he says. He says: 'My child will stay with me as long as I live.' He says: 'If she marries anybody she's going to let him understand on the start that she never going to leave her papa; that she stay with her papa as long as he lives or as long as she lives.' . . . I says: It would be all right if they marry. Mr. Cook says, if he do marry, he got to live with them." The same witness, Pomalek, testified in another connection that prior to the afternoon of the day Krieger was killed defendant and he had appeared to be on good terms; but that evening, after hearing his daughter's report of Krieger's misconduct, defendant was violently angry and made the threats above detailed. In other words, it appears by the evidence of this main witness for the state that the defendant for several days before the killing, having reason to believe that Krieger was seeking his daughter in marriage, remained friendly, but became violently enraged when he heard that in his absence Krieger had pursued her with improper solicitations and indecent familiarity. To my mind, this evidence, so far from sustaining the inference that the jealousy of the defendant had been aroused by any proper attentions of Krieger to his daughter (thereby causing him to seek an opportunity or pretext for killing him), has an opposite tendency,—a tendency to rebut whatever inference it may be claimed is to be drawn from the mere fact of the criminal connection of defendant and his daughter. The question to be decided, therefore, seems to resolve itself into this: Where the immediate circumstances surrounding a homicide leave it doubtful whether the killing was of deliberate malice, may the prosecution always prove that the slayer was on terms of criminal intimacy with a woman to whom the slain was paying his addresses, even though there is no direct evidence of actual jealousy? Upon this precise question we are referred to no authority directly in point.

In *People* v. *Gress,* 107 Cal. 463, [40 Pac. 752], it was held

to be error to admit evidence that the defendant had been trying to induce the wife of the deceased to leave him. But that decision is not in point here, although what was said by the court in regard to one of several alleged errors does sustain appellant's contention upon a point that we have here overruled. It was conceded in that case that if the defendant's agency in the killing had not been admitted and had depended on circumstantial evidence, his efforts to seduce the wife of deceased would have been relevant to the question of motive, and the error in admitting it was held to consist in its admission where it was not necessary. We think this was said without due consideration of the fact that in cases of homicide the presence or absence of motive to kill is always material, whether the killing is admitted or denied, not only in determining the degree of the murder, if murder, but also upon the question of malice where the plea is self-defense, as in this case, or provocation and sudden passion. What was decided on this point in *People* v. *Gress*, we think, was erroneously decided; but what was conceded seems to sustain the proposition that any existing cause for jealousy on the part of the slayer is relevant in cases of homicide, although it may not appear that jealousy has actually resulted. Aside from this case, there is in the briefs of counsel a dearth of authority on the precise question above stated, and no very convincing argument. We shall therefore go no farther than necessary to decide the precise point presented by the record, which is narrower and more technical than the matter we have been discussing. When the district attorney offered the evidence of defendant's criminal relations with his daughter, he offered to connect it with proof that he was extremely jealous of the attentions of any one to her, and that Krieger had been paying her attentions. This offer made the ruling of the court in admitting the evidence correct, and though, in my opinion, the offer was not made good, in the absence of any motion by defendant to strike out the evidence, it cannot be said that there was as to this matter any error in the rulings of the court.

Nor can it be said that the court erred in permitting the district attorney to cross-examine Ida Cook as to previous contradictory statements regarding her relations with her father. He had called her as a witness to prove the sexual

intercourse, and she, in response to direct inquiry, had denied that there had ever been any sexual intercourse. He then asked her if she had not made a contrary statement to him within twenty-four hours, and she answered, without objection, that she had, and had made the same statement to others at different times and places. Cross-examined by defendant's counsel, she gave it as an excuse for her statement to the district attorney that he had threatened, if she did not admit the intercourse, to ''send her to some home.'' She made similar excuses for her statements to others. On direct examination on the following day, the district attorney asked her in regard to other statements as to sexual intercourse with defendant, made at other times and places, and in the presence of other persons. Here for the first time defendant's counsel interposed an objection, on the grounds, among others, that the evidence was incompetent, and that the examination had gone far enough, which objections were overruled, and the witness answered that she had made one of the statements, but denied others. This ruling of the court could scarcely be regarded as injurious to the defendant, even if erroneous; for it only added one hearsay statement to a number of others of the same character that had come in without objection, and by which the witness was as completely discredited as she could have been by the addition of one more. But the ruling was not erroneous. The case is not affected by the qualification which this court has from the beginning imposed upon the general language of sections 2049 and 2052 of the Code of Civil Procedure. The witness in this case did not simply fail to give favorable testimony for the state. Upon the point at issue her testimony was positive against the state. This court has in a number of cases held, and I have no doubt correctly held, that the mere failure of a witness to give favorable testimony for the party producing him does not entitle such party to prove that he has made contrary statements elsewhere. (*People* v. *Creeks,* 141 Cal. 532, [75 Pac. 101], and cases cited.) But it has gone no further in qualifying the language of the statute. The rule on this subject, its origin, its policy, and its limitations, are very fully discussed in the recent work of Professor Wigmore (Wigmore on Evidence, sec. 902 et seq.), and his conclusion is that under statutes similar to ours the rule is

subject to no more stringent qualification than the decisions above referred to have imposed.

Defendant's counsel on cross-examination of Ida Cook asked her this question: "Do you know whether he had, in addition to a rifle, a large knife on his person?" This question referred to Krieger and to the time—about noon of the day of the homicide—when, according to the subsequent testimony of the witness, he had threatened to kill the defendant. The question was objected to on the grounds of incompetency, irrelevancy, and immateriality, and the objection was sustained, notwithstanding the offer of counsel to show that the fact was communicated to defendant. If the objection had been that it was not proper cross-examination, it would have been right to sustain it upon that ground and at that stage of the proceedings; but it was a mistake to hold that if, at the very time he was threatening to kill the defendant, and only a few hours before the fatal encounter, deceased was armed, not only with a rifle, but with a large knife, the fact was irrelevant, or that the testimony of Ida Cook was incompetent evidence of such fact. And it may be that the ruling upon the objection as made prevented the defendant's counsel from offering proof of the same fact as part of his own case, when it would clearly have been admissible as a circumstance to be weighed by the jury in considering the action of defendant in firing upon Krieger after his rifle had been taken away, but when, according to all the testimony, he was advancing upon defendant at close quarters, and, according to some of the testimony, in a threatening manner and in disregard of repeated commands from defendant to stand back. If this evidence had been offered at the proper time as part of defendant's case in support of his plea of self-defense, and excluded by the court on the objection as made, it would have been a serious error.

The court did not err in admitting the intercepted letters. That defendant was the author of the letters was proved by direct evidence that he had delivered them to the messengers, who conveyed them out of the jail, and the evidence of the handwriting, if insufficient of itself, was superfluous.

The defendant at the close of the trial requested the court to give, among others, the following instruction: "Evidence has been introduced by the prosecution in this case tending

to show that defendant, prior to the shooting, had had illicit intercourse with his daughter. I charge you that, although it should appear to you from the evidence that such a state of affairs existed, nevertheless the defendant would not for that reason be deprived of the right of self-defense, either in protection of his life or the prevention of great bodily injury, nor would he be deprived thereby of the right to the indulgence the law allows for killing upon a sudden quarrel or in the heat of passion. Whether or not the defendant had at some previous time committed another crime different from that for which he is being tried cannot be taken into consideration by you as a reason for convicting him of the crime with which he is charged.'' This request to instruct seems to us to have been wholly unobjectionable in point of law and strictly pertinent to the facts in evidence. It was of the highest importance to the defendant in this case, as it always is to any defendant in any case in which evidence of a distinct offense has been admitted for the purpose of showing motive to commit the crime charged that the jury should be cautioned not to consider such evidence for any but the limited purpose for which it has been admitted, and we cannot see that the instruction as presented contained a single word beyond what the defendant had a right to request. The court, however, refused the instruction, and its refusal is justified on the ground that another instruction framed by the judge on the same point was given. It is true that the instruction given stated the law correctly; but it was brief, general, and colorless in comparison with the instruction asked, and had the effect of minimizing the importance of a consideration which could not have been stated with too much emphasis. The instruction as asked should have been given.

The defendant's requests to instruct, numbered 7 and 8, related to a part of the law of self-defense strictly pertinent to the evidence of his witnesses. The wording of the seventh request is perhaps faulty, but the eighth stated the proposition of law in an entirely unobjectionable form, and the refusal of the court to give it is not justified by the instructions given of its own motion. Those instructions, while entirely correct and proper, were confined to a statement of what is not self-defense, and contained only an implication of the

proposition which the defendant had a right to have stated to the jury in direct terms.

The refusal of the court to allow defendant's requests to charge numbered 17 and 18 was placed partly upon the ground that they were presented too late, in view of a rule of court requiring requested instructions to be presented before the conclusion of the argument. What the terms of the rule are does not appear from the bill of exceptions; but if, as asserted by counsel for appellant, it applies only in civil cases, it did not justify a refusal to consider the requests, though presented after the argument and after the other instructions had been read. Nor was the refusal of the eighteenth request justified by reason of the instructions given. It related to the law of self-defense, and what has been said of the eighth request applies equally to it.

There remains but one other matter to be noticed: During his closing argument to the jury the district attorney allowed his zeal to betray him into the statement of a matter not in evidence, which was necessarily injurious to the defendant; and the court, upon objection to the statement and argument based upon it, justified the course of the district attorney upon the ground that counsel for defendant had referred in his argument to matters not in evidence. The following are the remarks of the district attorney, the objection of the defendant, and the ruling of the court: "I say to you, gentlemen of the jury, that there is not in the history of the world, I believe, a case parallel with this case here, if you gentlemen of the jury knew the history of this Cook family in all its ramifications. Mr. Craig went outside of the record here to bolster up the character of this defendant, and told you how energetic he had been in defense of the honor of his daughters. He told you how he had caused a man by the name of Ferguson to be arrested and sent to Folsom because of raping or having sexual intercourse with this little girl Belle, who testified on the stand here. But he neglected to tell you, gentlemen of the jury, that that same man Ferguson was at that time engaged to be married to his daughter Ida when he sent him to Folsom. He did not say anything about that to you as a possible motive why this defendant wanted to get Ferguson out of the way. It was not necessary to mention that. He did not go into all those facts because, gentlemen

of the jury, he did not want to treat you fairly upon that subject. That should never have been mentioned in the case. *Mr. Preston* (interrupting).—We desire to object to the remarks made by the district attorney relative to the question of the engagement to be married and the motive for the prosecution of Ferguson, and move that it be stricken out and the jury instructed to disregard it. *The Court.*—I think Mr. Craig opened the way for those remarks. *Mr. Preston.*— We except to the remarks of the court. *The Court.*—He referred to the action of the defendant with reference to Mr. Ferguson, when there was no evidence of it, and let the door open. *Mr. Preston.*—We object to it, and make an exception to the ruling.''

It was misconduct, calling for rebuke from the court, for the district attorney to state a fact not in evidence in order to found upon it an argument that defendant had sent one man to the penitentiary from the motive of jealousy, and therefore was capable of killing another upon the same incitement. And it was no excuse for the misconduct that the counsel for defendant had referred in his argument to the Ferguson trial. In the case of *People* v. *Kramer,* 117 Cal. 650, [49 Pac. 842], this court said in response to this excuse for similar misconduct: ''Assuming that the comments of the district attorney were not warranted by the evidence, his act would not be justified by the fact that defendant's counsel had already committed a like impropriety. The proper way to correct such an abuse of privilege on the part of either counsel is for his adversary to call it to the attention of the court and have it stopped.'' We cannot too strongly insist upon the observance of this admonition, as the only mode of confining criminal trials within proper limits, or conducting them with proper decorum, or—which is vastly more important—preserving the right of the defendant to be convicted only upon legal evidence addressed to the charge upon which he is being tried. Considering the nature of the collateral offense imputed to the defendant in this case, it is apparent that the evidence concerning it must have had a tendency to bias the jurors against him, and it was incumbent upon court and counsel to confine their attention to the evidence and to the only legitimate purpose of that evidence. That the statement to the jury of an incriminating fact not in

evidence as the basis of an argument against the defendant by the district attorney is grave misconduct has been decided by this court in *People* v. *Valliere,* 127 Cal. 66, [59 Pac. 295], and in *People* v. *Sing Lee,* 145 Cal. 191, [78 Pac. 636]. It is true that in those cases evidence of the facts used in argument by the district attorney had been ruled out by the court, and this certainly made the offense more flagrant; but that circumstance was not the ground of the decision, though it was perhaps the occasion for the severe terms of reprobation by which the conduct of the district attorney was characterized in the opinion of Judge Temple in the case of Valliere, the closing words of which we quote: ''The court promptly rebuked the attorney, but that did not cure the injury. Rebukes do not seem to have any effect upon prosecuting officers, and probably as little upon juries. The only way to secure fair trials is to set verdicts so procured aside.''

The judgment and order of the superior court are reversed and the cause remanded.

Van Dyke, J., concurred.

HENSHAW, J.—I concur in the opinion of the chief justice and in the judgment. That opinion, however, treats only of the case as it is presented upon this appeal, while, in contemplation of the new trial which must necessarily result, it seems to me obligatory upon us to direct the trial court upon the new phases of the question which are certain to arise. Of these, the first is as to the admissibility under any circumstances of this highly injurious testimony tending to show motive. It has been said by this court: ''In every criminal case proof of the moving cause is permissible, and oftentimes is valuable.'' (*People* v. *Durrant,* 116 Cal. 179, [48 Pac. 75].) As stated in the opinion of the chief justice, the admissibility or non-admissibility of such offered evidence presents a legal question, to be determined in the first instance by the trial court, and evidence, even though injurious, is not therefore inadmissible if it pertinently and logically tends to show motive for the crime, and thus to solve any doubt which may exist in the case, either as to the identity of the slayer, the degree of the offense, the insanity of the defendant, or to the justification or excusability of his act. It will not, of

course, be said that such evidence is admissible merely as the "foundation of an argument." It will not do even to say that such evidence should be admitted when the jury from it might draw an inference of motive. To be admissible it should be of such character as to show a logical, causal connection with the crime, moving the minds of unprejudiced jurors to the belief that it tends to establish the true motive. That evidence of the incestuous relations between defendant and his daughter was admissible in this case to show motive, as well as to throw light upon any doubtful circumstance attending the actual homicide, I am well convinced. Precisely what may be the mental process of one so degenerate it may not be easy to declare; but it is at least understandable from the evidence in the case that while he might not have objected to the marriage of his daughter, since she was to have lived with him, and thus have enabled him to continue the relationship, he might have well become incensed at the dishonorable solicitation of another man who was endeavoring to have sexual intercourse with her. His letters to his daughter show that he regarded himself more as her lover than as her father, and herself more as his mistress than his daughter. And his objection might have been the same objection that has excited many another man to crime when his love affair has been interfered with; or, again, he may have feared that his daughter would have yielded, and that, in the confidences which might follow, his own bestial conduct would be disclosed. That one or another, or both, of these considerations were the moving impulses of his mind seems to me beyond doubt, since no one can credit that having debauched the girl himself he could in any honorable and paternal sense be careful of her chastity or resentful of improper advances made to her by another. And if either of these views, or both, were entertained by the defendant, the fact of his relationship became proper for the jury.

Upon the assumption that the district attorney believed the statements which the girl had made to him, and, so believing, expected her to testify to them under oath, her impeachment was, as pointed out by the chief justice, legitimate evidence. But the situation presented upon a new trial will, in this regard, be entirely different. The district attorney cannot again be taken by surprise, and it would be highly

improper, prejudicial, and erroneous to adopt upon a new trial a method which the peculiar circumstances of the first trial alone justified. It is never permissible for an attorney to offer a witness in the expectation, or with the knowledge, that that witness will testify to a given fact, merely for the purpose of establishing the contrary by purely hearsay testimony. This would be subversive of the fundamental principles of evidence. Therefore, I think it should be pointed out that, while legitimate evidence of the incestuous relationship is admissible upon a new trial, such evidence cannot be presented to the jury by the method which the circumstances of the first trial alone made permissible.

Lorigan, J., concurred.

McFARLAND, J., concurring.—I concur in the judgment of reversal. I concur also in the reasons given in the opinion of the chief justice for the reversal; but I do not concur in some other parts of that opinion. I do not think that evidence of the unlawful relation between the defendant and his daughter was admissible at all. In the first place, I do not think that it tended to show motive for the killing; and in the second place, evidence of motive is admissible, in my opinion, only where the fact of the homicide is denied and is in doubt, and not where, as in the case at bar, it is admitted. (*People* v. *Gress*, 107 Cal. 461, [40 Pac. 752].) Moreover, in my opinion it was error to allow the district attorney to ask Ida Cook, when on the stand as his own witness, if she had not made declarations contrary to the testimony which she then gave. Her declarations were purely hearsay and inadmissible. A party can show contradictory statements of his own witness only where it reasonably appears that he was taken by surprise by the testimony given by his witness, and then the contradictory statements can be given only for the purpose of setting the surprised party right before the jury, not as general evidence in the case. Suppose at another trial the district attorney, well knowing what Ida would swear as to the incest, should again put her on the stand and ask her if she had ever had incestuous relations with defendant, and, upon her denying it, should ask her if she had not stated the contrary to other persons; is it possible that such questions should be allowed,

or would it be allowable for him to prove her declarations by others? It would be intolerable to allow the manufacture of evidence in this way. He might just as well prove her declarations in the first instance, without putting her on the stand at all.

SHAW, J.—I dissent. I do not think the propriety of the admission of the evidence tending to prove the existence of incestuous relations between the defendant and his daughter should under the circumstances of this case have been left in doubt. That such evidence would tend to show motive on the part of the father to kill a man whom he knew to be paying attentions to her of an amatory character, whether honorable or dishonorable, seems to me too clear to admit of doubt or justify elaborate discussion. The instruction quoted in the main opinion on the subject of the purpose for which the evidence of incest should be considered by the jury, and which was refused by the court, was, in my opinion, clearly objectionable. It purported to give a positive direction to the jury, in effect, that the evidence of incest by the defendant and his daughter could not be considered as a reason for convicting him of murder. The rule is, and it is supported by the main opinion, that if they should believe from the evidence of such incest and the other evidence in the case that the motive for the killing was to prevent exposure of the incest, or was rage or jealousy growing out of the incestuous relations, then the fact of the existence of such incestuous relations must constitute one of the reasons (using the word in a sense very common) which would impel the jury to convict him of murder.

With respect to the instructions asked after the argument, and after the giving of all the other instructions, the rule of the court referred to by defendant's counsel applies to criminal cases as well as civil, but leaves the court at liberty to give the instruction or not in criminal cases. The matter treated of in these instructions—self-defense—was fully treated in other instructions given by the court, and hence they do not come within the principle that in criminal cases an instruction which, under the rules of the trial court, is requested too late should nevertheless be given if it is upon a point material to the defense and not covered by other instructions.

As to the alleged improper remarks of the district attorney in his argument to the jury, it is clear they were provoked, if not justified, by the misconduct of the defendant's attorney, who in his argument stated to the jury facts not in the record relating to the same subject, and did so manifestly for the purpose of prejudicing the case of the people in the minds of the jury. I am unable to approve the view which seems to have been adopted in the main opinion, with respect to such misconduct. The commonwealth must necessarily, in its efforts to prevent and punish the commission of crime, avail itself of the agency of mere human beings who are subject to the common weaknesses incident to humanity, and are influenced and controlled by like passions and impulses as the rest of mankind. The trial courts and the prosecuting officers when engaged in the trial of a criminal case must proceed with some celerity. In the argument, particularly, the district attorney is liable to be moved by sudden and ill-advised impulses, and to say things on the spur of the moment and under the provocation frequently so freely given by the opposing attorneys, which, if taken seriously and considered by the jury as part of the evidence, would be prejudicial to the rights of the defendant. And the court itself, under the pressure of the occasion, is likely to manifest some human impatience with the untimely interruption of an argument, and to overrule objections which, upon maturer reflection, it would sustain. In view of these difficulties naturally existing in the prosecution of every case, and of the further fact that such improper action is not infrequently deliberately provoked by shrewd attorneys for the defense for the very purpose of causing a subsequent new trial or reversal, and that such motive cannot usually be exposed, it should not be the policy of this court, sitting in chambers, with ample opportunity for grave deliberation, to be swift to criticise, or declare injurious error, the action of the trial court or of the district attorneys in such matters. Under our system of criminal jurisprudence it is taken as a certainty that a properly impaneled trial jury is a fit tribunal for the determination of the question of the guilt or innocence of the defendant. This necessarily implies that these triors are capable of discerning the radical difference between the evidence and the argument,

and to know the different manner in which each is to be considered by them. If not, they would be utterly unfit for the performance of their office. The rule of practice in regard to such alleged misconduct should require the counsel for the defendant not only to object at the time to the improper argument complained of, but also to make formal request to the court to instruct the jury that they must disregard such argument and decide the case solely on the law and the evidence. If the court does so instruct the jury, that should be deemed the end of the matter, unless the trial court, in its discretion, believes the injury from the misconduct to be so serious as to require a new trial.

In the present case the court did not, at the time of the objection and request for an instruction concerning this particular part of the argument, either deny or grant the request. Afterwards, however, during the same argument, objection was made to another portion thereof, and a like request made for an instruction to the jury, and thereupon the court instructed the jury not to consider the remarks as influencing their verdict, and "not to be influenced by any remark of any attorney, but to decide it on the law and the evidence." This instruction was clearly intended to apply to all the previous remarks of the district attorney, and it must be presumed to have been so understood. The other instructions also repeatedly directed the jury that the several facts involved in the guilt of the defendant must be determined from the evidence and proved beyond reasonable doubt. They were also sworn to "a true verdict render, according to the evidence." If the jury were fit to try the case at all, as they are conclusively presumed to be, they must have obeyed these clear instructions and their own solemn oath.

I desire to say, in addition, that I concur in the remarks of Justice Henshaw in his concurring opinion. I think the judgment should be affirmed.

ANGELLOTTI, J.—I dissent from the judgment of reversal, and concur generally in the views expressed by Justice Shaw in his dissenting opinion. In regard to the charge of misconduct on the part of the district attorney in argument, I have no doubt that the remark complained of as to an existing engagement of marriage between Ferguson and the

daughter Ida was improper; but I do not think that under the circumstances of this case we have the right to assume that the jury may have been at all influenced thereby, in view of the explicit instruction of the court to the jury, given during the argument, that they must not consider or be influenced by any remark of the district attorney, but must decide the case on the law and the evidence.

I concur in the views expressed by Justice Henshaw upon the question as to the admissibility of the evidence tending to show the relations existing between defendant and his daughter Ida, and also in what is said by him as to the questions asked the witness Ida by the district attorney in relation to her previous statements to him and to others, and in what is said by him as to the only basis upon which such questions can properly be allowed.

Rehearing denied.

In denying a rehearing, the following opinion was rendered on January 12, 1906:—

BEATTY, C. J.—A rehearing of this cause is denied, but it is proper to say that the petition of counsel for the people points out a mistake in my opinion which requires correction. The superior court did not err in refusing defendant's requested instruction 18. It was rendered erroneous by the insertion of the word "misdemeanor." This fault in the instruction was not adverted to in the argument upon which the cause was submitted, and escaped the attention of the court, as it seems to have done in *People* v. *Glover*, 141 Cal. 237, 238, [74 Pac. 745], where a similar instruction was said clearly to express the law. In that case, as in this, however, the attention of the court was directed exclusively to other questions affecting the ruling complained of, and this particular fault in the wording of the instruction overlooked. The law on the point is correctly stated in *People* v. *Hecker*, 109 Cal. 461, [42 Pac. 307]. It is proper, also, to state that for another reason there was no error in refusing to give either the eighth or eighteenth instruction requested by defendant. The points to which they were directed were fully covered by instructions 9, 10, and 11, given at request of the defendant. This fact was pointed out in the brief

of the attorney-general, but by some inadvertence in preparing the opinion my attention was confined to the instructions given at the request of the people, which, as stated, merely pointed out the limitations of the right of self-defense.

As to the question of the right of the people to prove the incest without evidence *aliunde* of actual jealousy, the point, though not decided in my opinion, seems to be clearly decided by a majority of the court in favor of the people.