[Crim. No. 183.  Second Appellate District.—June 14, 1911.]

THE PEOPLE, Respondent, v. A. H. BURNS, Appellant.

CRIMINAL LAW—GRAND LARCENY—UNAUTHORIZED WITHDRAWAL OF BANK DEPOSIT—INTOXICATION OF DEPOSITOR—FELONIOUS CONVERSION—SUPPORT OF VERDICT.—Where there is a conflict of evidence as to whether the prosecuting witness signed a withdrawal draft for $1,500 from a savings bank, and the evidence clearly tends to prove that, if he did sign it, he was imposed upon, and his signature was obtained in concealment of the amount, while he was in a state of intoxication, which rendered him incapable of intelligent action, and that, by means of a scheme and trick devised and

planned by defendant for the purpose, he feloniously obtained the whole of the money, with intent to convert to his own use, and that he did so convert it, it is held that the evidence sufficiently supports the verdict of conviction.

ID.—EVIDENCE OF MOTIVE—FRAUDULENT CONVERSION OF DIFFERENT DEPOSIT.—Evidence of another fraudulent scheme whereby the possession of another deposit belonging to the prosecuting witness was obtained in the same manner by defendant was admissible for the purpose of showing a motive for the commission of the crime charged.

ID.—INFORMATION FOR OFFENSE TRIED NOT ASSAILABLE FOR PRIOR INFORMATION FOR DIFFERENT OFFENSE.—The fact that a previous information was filed charging the commission of the prior offense proved is no ground for setting aside the information filed for the subsequent offense tried, and under which the conviction of the defendant was had, the prior offense charged being for a wholly distinct and separate transaction.

ID.—PROPER INSTRUCTION—PURPOSE OF PRESUMPTION OF INNOCENCE.—The court properly instructed the jury that the presumption of innocence with which the law clothes one charged with the commission of crime is not intended to aid the guilty, but to guard the innocent from unjust punishment.

ID.—COMPLAINT FOR EMBEZZLEMENT—IMPEACHMENT OF COMPLAINING WITNESS—PROOF OF IDENTITY OF OFFENSE CHARGED.—A complaint for embezzlement is not admissible to impeach the complaining witness, without proof that the complaint is founded upon the same transaction as the larceny charged.

ID.—NATURE OF IMPEACHING TESTIMONY—INCONSISTENCIES WITH EVIDENCE GIVEN.—In order to impeach a witness on the ground of inconsistent statements, the impeaching testimony must appear to be plainly inconsistent with that already given.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial. T. L. Lewis, Judge.

The facts are stated in the opinion of the court.

L. E. Dadmun, for Appellant.

U. S. Webb, Attorney General, and George Beebe, Deputy Attorney General, for Respondent.

SHAW, J.—Defendant was convicted upon an information charging him with the crime of grand larceny. He appeals

from the judgment and an order denying his motion for a new trial.

It appears from the record that about March 1, 1910, the complaining witness, Frank Brayer, a German laborer having little knowledge of the English language, went to San Diego from Los Angeles and for eight dollars per month secured a room in a lodging-house conducted by defendant and his wife, with neither of whom prior to such time was he acquainted. At this time Brayer had $135 in cash and on deposit with the Security Savings Bank of Los Angeles the the sum of $1,500, and also had on deposit with the German-American Savings Bank of Los Angeles the sum of $2,040.

From the time Brayer entered defendant's lodging-house he indulged in the excessive use of liquor, as a result of which he was in a continuous state of intoxication, which rendered him during a great part of the time both physically and mentally helpless. About March 15th, while in this condition of incapacity, he authorized a transfer of $1,000 from the German-American Savings Bank to the Blochman Banking Company in San Diego, signing a receipt therefor by means of his mark. A few days thereafter defendant forwarded to the German-American Savings Bank another receipt, purporting to be likewise signed by Brayer, for the balance of said deposit. The bank, as a precautionary measure, it seems, sent the money to the Blochman Banking Company, where it was deposited to Brayer's credit. All of this amount, except $15.11, was drawn out of the bank upon various checks payable to defendant, nearly all of which purported to be signed by the mark of Brayer, witnessed by the signatures of others. It appears, however, that the signatures of these persons so signing as witnesses were by defendant procured upon blank checks before they were filled out, and before Brayer had made his purported mark thereon. On or about March 15th, defendant presented to the Merchants' National Bank of San Diego a draft, payable to S. J. Burns, on the Security Savings Bank of Los Angeles for the sum of $1,500, which draft purported to be signed by Brayer, and stating that he desired to use it at once, requested the cashier to ask the Security Savings Bank to notify him by wire if paid. This draft was returned with a statement that the signature was irregular. Another draft was prepared, which was likewise unpaid, and

still a third prepared, which purported to be signed by Frank Brayer and witnessed by three persons, likewise payable to S. J. Burns, whom defendant falsely stated to the bank was his sister in law, and also falsely stated to the bank that Brayer was his brother in law. This last draft, upon the guaranty of the signature made by the Merchants' National Bank, was paid by the Security Savings Bank and the proceeds deposited to the credit of said S. J. Burns in the Merchants' National Bank, under an agreement that defendant should control the fund and draw checks thereon, signing the name of S. J. Burns thereto. This $1,500 is the subject of the larceny for which defendant was tried and convicted.

There is a conflict of evidence as to whether Brayer signed this $1,500 draft. The evidence, however, clearly tends to prove that if he did sign it, his signature thereto was procured while he was in a state of intoxication which rendered him incapable of intelligent action, and by means of a scheme and trick devised and planned by defendant for the purpose of feloniously obtaining possession of the money with the intent to convert it to his own use and that he did so convert it. Without undertaking to recite the voluminous evidence tending to establish the many circumstances pointing to defendant's guilt, it is sufficient to say that the jury was warranted in its conclusion that no authority was given for the act by means whereof defendant obtained possession of the $1,500 which Brayer had on deposit with the Security Savings Bank. There is no merit in the contention that the evidence is insufficient to justify the verdict.

For the purpose of showing the motive accompanying the acts of defendant in securing the $1,500, the court, over defendant's objection, permitted the district attorney to introduce evidence touching the withdrawal of the money deposited to Brayer's account in the Blochman Banking Company. This ruling is assigned as error. It appears that on March 16, 1910, $1,000 was deposited in Brayer's name with the Blochman Banking Company, followed on March 31st by a deposit of $1,040.11; that between March 16th and May 20th this entire sum, less $15, was drawn out by defendant by means of twelve checks presented on as many different days, the amounts of which checks varied from $75 to $300 each, all of which were drawn by defendant payable to himself, and the

signatures to all of these checks but one purported to be by
Brayer's cross or mark.    It is significant that on the day this
$300 was drawn a like sum was deposited by defendant to the
account of S. J. Burns with the Merchants' National Bank.
With reference to these checks, Brayer testified that he signed
his full name to one check for $25, which, however, does not
appear to have been presented, and he admitted that while
drunk he affixed his mark to three checks, the amounts of
which he could not state for the reason that defendant held
his hand over them, preventing his seeing the same.    It thus
appears that after the transfer of the $2,040.11 to the Bloch-
man Banking Company, defendant also, and by means sim-
ilar to that employed by him in getting possession of the
$1,500, obtained the possession of the entire sum, less the
amount of $15.11 above stated, which was drawn out by
Brayer.    The testimony shows that defendant, from time to
time during the period from March 16th to May 20th, gave
small sums of money to Brayer, one of which amounted to
$25, and that he paid his liquor bills and other bills and
bought liquor for him, all of which, according to Brayer's
testimony, did not exceed the sum of $2.50 per day.    While
it was shown that the withdrawal from the Security Savings
Bank of the $1,500 was unauthorized, nevertheless, it was
necessary, in order to constitute the act larceny, to show an
intent on the part of defendant to convert the same to his
own use.    The evidence touching the transactions had by de-
fendant at the same time with the Blochman Banking Com-
pany, whereby he obtained possession of Brayer's money on
deposit with that bank and converted it to his own use, was
proper as tending to show that a like motive prompted him
in securing possession of the deposit of $1,500 from the Secu-
rity Savings Bank.    The system employed to obtain the de-
posit in the Security Savings Bank was identical with that
which defendant was at the same time employing in gaining
possession of and appropriating to his own use the money of
Brayer deposited with the Blochman Banking Company, and
the fair and logical inference to be drawn from his acts is
that in each case the motive was the same.    In the case of
*People* v. *Zimmerman,* 11 Cal. App. 117, [104 Pac. 590], this
court, in discussing a like question, said: "Where the purpose
is to show motive or system, the evidence is admissible if it

have a direct tendency, in view of the surrounding circumstances, to prove motive or intent or other material fact.'' That it was not error to admit the evidence is fully sustained by numerous cases. (*People* v. *Cook,* 148 Cal. 334, [83 Pac. 43] ; *People* v. *Tomalty,* 14 Cal. App. 224, [111 Pac. 513] ; *People* v. *Schwartz,* 14 Cal. App. 9, [110 Pac. 969] ; *People* v. *Ruef,* 14 Cal. App. 576, [114 Pac. 48, 54].)

Two informations charging defendant with grand larceny were filed by the district attorney, one of which, numbered 16,307, based upon the proceedings had before the magistrate on July 13, 1910, upon which charge a commitment was issued, charged him with grand larceny in the felonious stealing of $300 from Frank Brayer on May 20, 1910; the other, numbered 16,308, being the one upon which defendant was tried and convicted, and based upon the hearing and proceedings had before the magistrate on July 21, 1910, upon which commitment was issued, charged him with the larceny of $1,500 from Frank Brayer on March 28, 1910. Defendant made a motion to set aside the information No. 16,308, and upon which defendant was tried, upon the ground that defendant had not been legally committed by the magistrate before the filing of the information. The motion was denied. It appears that the testimony adduced at the examination held by the magistrate on July 13, 1910, for the stealing of the $300, was substantially the same as that presented on July 21, 1910, at the hearing upon the complaint charging defendant with the stealing of the $1,500. At the first hearing defendant was committed for the larceny of $300 on May 20, 1910, and at the second hearing he was committed for the larceny of $1,500 on March 28, 1910. Appellant's argument in support of his contention that the ruling constituted error is based upon the theory that two criminal charges were preferred upon the same state of facts. This, of course, cannot be done. Such, however, is not the case here. The larceny of the $1,500 obtained from the Security Savings Bank is entirely distinct and separate from the transaction had by defendant with the Blochman Banking Company, by reason whereof he was charged with feloniously obtaining possession of $300 belonging to Brayer. Nor would the fact that because in the one case evidence touching upon the other was introduced disqualify the magistrate from acting at the hear-

ing upon the other charge, any more than it would disqualify
a judge who had presided at the trial of the one from sitting
upon a hearing of the second. In our opinion, the point is
wholly without merit.

The court refused to give certain instructions requested by
defendant. One of these was to the effect that if the $1,500
alleged to have been stolen by defendant was taken at vari-
ous times and in sums of less than $50 each, defendant could
not be convicted of grand larceny. Not only was the subject
of this instruction fully covered by other instructions, but
since the taking was of the entire deposit of $1,500, posses-
sion of all of which was obtained at one and the same time,
and the act of conversion was complete, if converted at all,
when deposited in the Merchants' National Bank to the ac-
count of S. J. Burns, controlled by defendant, there was no
theory of the case under which the instruction was proper.

The effect of another instruction requested was to take
from the jury the consideration *for any purpose* of all evi-
dence pertaining to transactions had by defendant with the
Blochman Banking Company in securing Brayer's money de-
posited therein. In view of what has heretofore been said
upon the admissibility of this evidence, it must necessarily
follow that defendant was not entitled to an instruction in
the unqualified form requested. The substance of other in-
structions requested appears to have been embodied in instruc-
tions given by the court of its own motion.

At the request of the district attorney, the court instructed
the jury to the effect that the presumption of innocence with
which the law clothes one charged with the commission of
crime, thus casting the burden of establishing his guilt upon
the state, is not intended to aid the guilty, but to guard the
innocent from unjust punishment. Appellant insists that the
giving of this instruction was an invasion of the province of
the jury by the court, in that it emphasized the probability
existing in the mind of the court that defendant was guilty.
We do not so regard it. Moreover, as the instruction was but
a correct statement of the reasons underlying the law, error
cannot be predicated thereon.

On cross-examination, Brayer testified that he did not tell
the district attorney that defendant was his agent, nor that
he had given to defendant to keep for him the $1,500 for the

larceny of which defendant was then being tried; also that he did not sign a criminal complaint before a justice wherein he stated that he had turned over to defendant to keep for him this particular $1,500 referred to in the information. He was then shown a criminal complaint which had theretofore been filed with a justice of the peace, and admitted signing and swearing to the same. Thereupon defendant offered the complaint in evidence, an objection to the introduction of which was sustained. The purpose of offering the complaint in evidence was to impeach the testimony of Brayer by showing that he had made statements in this complaint inconsistent with his testimony above referred to. Brayer, however, had testified that he had filed no complaint charging defendant with embezzling the particular $1,500 for which he was then being tried upon an information charging him with grand larceny. Defendant made no attempt to identify the $1,500 specified in the complaint charging him with embezzlement with that for which he was being tried upon a charge of grand larceny. Whether or not the charge of embezzlement was founded upon the same transaction and state of facts as that upon which the charge of grand larceny was based is not made to appear; indeed, the testimony of Brayer tends to prove the contrary. Hence, it was not error for the court to refuse to admit the complaint in evidence, particularly as the district attorney had objected to its introduction upon the ground that it referred to a different transaction which had no reference to the taking of the $1,500 referred to in the information, or in any way connected with the offense for which defendant was then being tried. "To impeach a witness upon the ground of inconsistent statements, the impeaching testimony must be plainly inconsistent with that already given." (*Estate of O'Connor*, 118 Cal. 69, [54 Pac. 4]; *People* v. *Collum*, 122 Cal. 186, [54 Pac. 589].)

The record discloses no prejudicial error. The judgment and order are, therefore, affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 14, 1911.