[Crim. No. 2103. First Appellate District, Division One.—July 22, 1940.]

THE PEOPLE, Respondent, v. J. E. MITCHELL, Appellant.

E. A. Warth for Appellant.

Earl Warren, Attorney-General, William F. Cleary and Dennis Hession, Deputies Attorney-General, for Respondent.

PETERS, P. J.—Mitchell was convicted by a jury of an assault by "means of force likely to produce great bodily injury" (sec. 245, Pen. Code), and sentenced to one year in the county jail. He appeals from the judgment of conviction, from the order denying his motion for a new trial, and from the order denying his motion in arrest of judgment. On this appeal he contends that the evidence is insufficient to support the verdict, that the court erred in overruling his demurrer to the information, and erred in denying his motion for arrest of judgment.

As to the first contention, a reading of the record demonstrates that there is substantial credible evidence to support the verdict.

Appellant Mitchell, at the time here in question, was a member of the city council of Salinas, and, before that, had been chief of police in McKittrick. He was forty-seven years of age, was six feet five inches tall, weighed about two hundred and forty pounds, and had been a former professional heavyweight prize fighter.

On July 9, 1939, at about 9 P. M., Mitchell, a Miss Whitaker, and Mr. and Mrs. Ed Storm, arrived at the Bridge Cafe, located a few miles from Salinas in Monterey County, for a dinner party. Ed Storm was thirty-one years of age, weighed two hundred and twenty pounds, and was a former college and professional football player. It is an admitted fact that both Storm and Mitchell were sober at all times here involved.

At about 9:30 P. M. the prosecuting witness, Lynn Dayhuff, arrived at the cafe with his wife, four other adults, and a child. This group was celebrating the birthday of one of the party. Dayhuff was forty-three years of age and weighed one hundred and sixty pounds. Although Dayhuff and the members of his party denied that they had had anything to drink prior to their arrival at the cafe, all of the disinterested witnesses testified that the adult members of the party showed evidences of having been drinking. Admittedly they had two highballs each after their arrival at the cafe.

At about 10 P. M. Storm and Mitchell visited the men's restroom. Upon leaving that room they met Mrs. Dayhuff and Mrs. Thompson, a member of the Dayhuff party, in the hallway. Storm and Mitchell apparently believed that the two women were about to enter the men's room in the mistaken belief it was the women's lounge. Some remark was made that Mrs. Dayhuff considered to be insulting. Storm and Mitchell returned to their table. A short time thereafter Dayhuff accosted Mitchell on the dance floor and asked him why he had insulted Mrs. Dayhuff. Appellant replied that he had not insulted anyone, but, if Mrs. Dayhuff so construed what had been said in the hallway, he apologized. This seemed to satisfy Dayhuff, and the parties returned to their respective tables.

A short time thereafter Mitchell and Storm observed the members of the Dayhuff party approaching the Mitchell table. They got up and went to meet them. Dayhuff again accused Storm and Mitchell of insulting his wife and Mrs. Thompson. Dayhuff and Storm began to push each other around, some

names were called, and the other members of the Dayhuff party joined in the general melée. Although denied by Storm and Mitchell, Dayhuff testified that Storm hit him on the jaw, and that Mitchell hit him on the forehead. At about this time Mr. Pruitt, the cafe owner, his wife, and a Mr. Jeffery stepped in as peacemakers and tried to quiet Dayhuff, who apparently was the aggressor. Jeffery was a former wrestler, and finally he locked Dayhuff's arms behind him and walked him out on the porch. Various people surrounded Dayhuff pleading with him to control his temper. According to the testimony introduced by the prosecution, Jeffery was still holding Dayhuff, and Dayhuff had his back to the door of the cafe, when appellant stepped through the door onto the porch, stepped back inside the barroom, seized two beer bottles, returned to the porch, and, reaching over the heads of two or three people, hit Dayhuff on the side of the head with one of the bottles. Dayhuff's head was seriously lacerated by the blow, and he was immediately taken to the hospital for treatment.

Appellant, who took the stand on his own behalf, admitted hitting Dayhuff with the bottle, but, in defense of his actions, testified that when he struck Dayhuff the latter was not being held by Jeffery, but had an open pocketknife in his hand, and that he hit Dayhuff because he feared that Dayhuff was going to stab either Storm or himself. It is appellant's theory that the only credible evidence in the record demonstrates that he struck Dayhuff in defense of himself and Storm, and that the assault was justified. He produced several witnesses who corroborated his story that at the time he hit Dayhuff the latter was not being held by Jeffery, and that Dayhuff had an open pocketknife in his hand. As opposed to this testimony Dayhuff testified that he was still being held by Jeffery when appellant hit him with the bottle, that his back was to appellant, and that he did not at any time that evening have a knife in his hand. Several members of the Dayhuff party, as well as several other witnesses, testified that Dayhuff was still being held by Jeffery when Mitchell hit him with the bottle, and that at that time Dayhuff's back was towards Mitchell. Jeffery testified that he was holding Dayhuff when he was hit and that he did not see any knife in Dayhuff's hands. A half dozen other witnesses who were on the porch testified that they saw no knife in Dayhuff's hands.

It is obvious that, on the issue of whether Mitchell hit Dayhuff in reasonable self-defense, the evidence is directly in conflict. As an appellate court it is not our function to weigh this evidence. We are not required nor permitted to give our views as to the weight of the evidence. That is solely the function of the jury in reaching its verdict, and of the trial judge in passing on the motion for a new trial. Although the evidence shows that Dayhuff was the aggressor, and was probably a little drunk, and although the evidence also shows that up until he hit Dayhuff with the bottle Mitchell and Storm exercised considerable restraint, the evidence introduced by the prosecution and believed by the jury demonstrates an unlawful assault by Mitchell within the meaning of section 245 of the Penal Code.

The next main contention of the appellant is that the court erred in overruling his demurrer to the information and in denying his motion for arrest of judgment. It is urged that the information does not substantially conform to the code requirements in pleading the offense, and that the facts stated therein do not constitute a public offense. It is further urged that, if the information does comply with the statutory requirements, then he has been deprived of the rights conferred upon him by section 13, article I, of the Constitution of this state.

So far as pertinent here, section 245 of the Penal Code provides that ''Every person who commits an assault upon the person of another . . . by any means of force likely to produce great bodily injury'' is guilty of the offense defined in the section. The information charges Mitchell with ''the crime of Assault by Means of Force Likely to Produce Great Bodily Injury, the same being a felony, committed as follows:

''The said J. E. Mitchell, on or about the ninth day of July, A. D. Nineteen Hundred and Thirty Nine, at the County and State aforesaid, did wilfully and unlawfully assault the person of one Lynn Dayhuff, by means of force likely to produce great bodily injury . . . ''.

It is the contention of appellant that this information is fatally defective in that it fails to allege or specify the kind or character of the force used by appellant in the commission of the alleged assault. In this connection appellant places his sole reliance on the case of *People* v. *Perales,* 141 Cal. 581 [75 Pac. 170]. That case involved an appeal by the people

from a judgment entered after the sustaining of a demurrer to the information. The information charged Perales with having assaulted one Soto ''by means likely to produce great bodily injury, to-wit, with a heavy wooden stick''. The court held that it was generally true that it was sufficient to charge an offense in the language of the statute, but held that, under the statutes then in effect, that rule was subject to the qualification that where a more particular statement of facts is necessary in order to charge the offense definitely and certainly, the facts must be set forth. The court stated (p. 583): ''When, however, the words or terms used in the statute have no technical or precise meaning, which of themselves imply the offense, or where the particular facts or acts which shall constitute it are not specified, but, from the general language used, many things may be done which may constitute an offense, it is then necessary, in charging an offense claimed to be embraced within the general language of the statute, to set forth the particular things or acts charged to have been done, with reasonable certainty and distinctness, so that the court may determine whether an offense within the statute is charged, or one over which it has jurisdiction, and so that the defendant may be advised of the particular nature of it, in order to defend against it, and to plead in bar a judgment of conviction or acquittal thereof, if subsequently prosecuted.''

The court then held that in pleading an assault within the meaning of section 245 of the Penal Code, it was not sufficient to plead the offense in the terms of the statute, but the information must specify the particular means used. There can be no doubt that if this case still is the law of California that the information here involved was defective. It is clear, however, that the Perales case no longer states the rule of law applicable. The rule of that case has been changed by statutory enactment. The Perales case was decided in 1904. At that time section 952 of the Penal Code required that the pleading must set forth the particular circumstances of the offense charged. The legislature in 1927, and again in 1929, amended various sections of the Penal Code relating to pleading in order to adopt a more simplified procedure. As amended in 1929, and as it now reads, section 952 of the Penal Code expressly provides that ''In charging an offense . . . It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words

sufficient to give the accused notice of the offense of which he is accused." This amendment, and other amendments adopted in 1927, has changed the rule of the Perales case. The Supreme Court, in *People* v. *Pierce,* 14 Cal. (2d) 639 [96 Pac. (2d) 784], and the appellate court, in *People* v. *Beesly,* 119 Cal. App. 82 [6 Pac. (2d) 114, 970], have fully considered the legal effect of the 1927-1929 amendments to the Penal Code. As established by these cases the rule is that it is now sufficient to plead the offense in the exact terms of the statute, and the accused is not entitled to a detailed allegation setting forth the particular circumstances. The accused is amply protected because he is legally entitled to a transcript of the testimony upon which the indictment or information is based.

Moreover, even before the 1927 amendments above-referred to, it was held that if a demurrer to an information has been erroneously overruled, or a motion in arrest of judgment based on alleged insufficiency of the pleading erroneously denied, unless prejudice is shown the error is not reversible, and that section 4½ of article VI applies to such errors in pleading (*People* v. *Hinshaw,* 194 Cal. 1 [227 Pac. 156]).

Appellant contends further, however, that if the information here involved is sufficient under existing statutes, then he has been deprived of a right guaranteed him by section 13 of article I of the state Constitution. The portion of the section relied upon is the provision that "No person shall be twice put in jeopardy for the same offense." It is his contention that the evidence produced by the prosecution shows two assaults by him—the first occurring on the dance floor where Dayhuff testified appellant struck him on the forehead with his fist and inflicted a cut, and the other when he hit Dayhuff on the head with the bottle. It is his theory that, from the information, the evidence and the verdict, it is impossible to determine for which assault he has been found guilty so that in the event of a subsequent prosecution he would be deprived of his right to plead once in jeopardy. There is no merit in this contention. In the first place, a reading of the record demonstrates that appellant was prosecuted and convicted for his assault upon Dayhuff with the beer bottle. Were he to be prosecuted again for this offense he could plead his conviction and establish the identity of the cases by evidence. (*People* v. *Faust,* 113 Cal. 172 [45 Pac. 261]; *People* v. *Burke,* 18 Cal. App. 72 [122 Pac. 435].)

■ A second complete answer is that there was in fact but one assault. The evidence concerning the blow struck by appellant with his fist was merely testimony regarding a portion of a transaction which culminated in the assault with the bottle. In this regard the case closely parallels the factual situation presented in *People* v. *Oppenheimer*, 156 Cal. 733 [106 Pac. 74]. In that case the defendant was charged with an assault with a deadly weapon. The information failed to specify the nature of the deadly weapon with which the assault was alleged to have been committed. The evidence showed that the defendant had first slugged his victim with a window weight and later stabbed him with a knife. It was held that there was in fact but a single assault even though two weapons were used. That is exactly the situation here presented. There was but one assault, although two blows, one with the fist and one with a bottle, were struck.

For the foregoing reasons the judgment and orders appealed from are affirmed.

Knight, J., and Ward, J., concurred.